# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IAN DOMINIQUE HUDSON,<br><br>Defendant. | Case No. 5:18-CR-40036-HLT |

## MEMORANDUM AND ORDER

Defendant Ian Dominique Hudson, who is charged with possession of a firearm by a prohibited person, moves to suppress a firearm recovered from his vehicle, arguing that it is the fruit of an illegal seizure. Docs. 16, 29. The government contends law enforcement never seized Mr. Hudson within the meaning of the Fourth Amendment because he never submitted to law enforcement's show of authority during an attempted traffic stop and, instead, fled from the vehicle leaving the firearm on the seat. Because the Court agrees that Mr. Hudson was not seized when he abandoned the vehicle and firearm, the Court denies the motion.

## I. BACKGROUND[1]

In December 2017, the United States Marshals Service was surveilling Mr. Hudson in an effort to find a fugitive, Charles L. Steele, who was known to associate with Mr. Hudson. On December 5, 2017, Deputy United States Marshals ("DUSMs") Blake Lemer and Quentin Terrel observed Mr. Hudson and a man who shared some of Mr. Steele's physical characteristics get into a Camaro Mr. Hudson was driving. The deputies, driving separate unmarked cars, followed the

---

[1] The following facts are based on the credible testimony the Court received at the January 24, 2019 evidentiary hearing.

1

Camaro through town and into Mr. Hudson's neighborhood. Eventually, after some erratic driving, Mr. Hudson drove into a cul-de-sac and up into a driveway.

DUSM Terrel, while separate from DUSM Lemer, stopped behind Mr. Hudson, activated his vehicle's red-and-blue flashing lights, and exited his vehicle with his weapon drawn. He identified himself as "Police" and ordered Mr. Hudson to "Stop" and to "Get out of the car." Mr. Hudson looked at him and began backing up the Camaro toward DUSM Terrel's vehicle, getting within ten feet of it before putting the Camaro in drive again. While the Camaro rolled forward, Mr. Hudson began to exit the Camaro, leaned back down in the vehicle, then exited the Camaro, and briefly walked toward DUSM Terrel. DUSM Terrel started to approach Mr. Hudson and repeatedly ordered him to "Get on the ground." But Mr. Hudson did not comply with these commands. When Mr. Hudson was about five feet away, DUSM Terrel reached for him but, before DUSM Terrel could touch him, Mr. Hudson turned and ran away on foot. DUSM Terrel did not follow him.

DUSM Terrel then approached the Camaro and had the passenger put it in park. DUSM Lemer had arrived by this point. He and DUSM Terrel then removed the passenger from the car and spotted a firearm on the driver's seat. The deputies determined that the passenger was not Mr. Steele but was instead Jameson G. Potts.

## II. ANALYSIS

Mr. Hudson argues that the firearm must be suppressed as the fruit of an unlawful seizure because the deputies lacked reasonable suspicion to seize him. The government contends that law enforcement never seized Mr. Hudson within the meaning of the Fourth Amendment because, rather than submitting to law enforcement's show of authority, Mr. Hudson fled from the vehicle, leaving the firearm on the seat. For the following reasons, the Court agrees with the government.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. CONST. amend. IV. A person is "seized" within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Absent the use of physical force, a seizure requires both a "show of authority" from law enforcement and "submission to [that] assertion of authority" by the person at whom it is directed. *California v. Hodari D.*, 449 U.S. 621, 626 (1991). Because DUSM Terrel never applied physical force to Mr. Hudson, the Court must determine (1) whether DUSM Terrel made a show of authority directed at Mr. Hudson and, if so, (2) whether Mr. Hudson submitted to it.

### A. DUSM Terrel Made a Show of Authority

To determine whether law enforcement has displayed a show of authority sufficient to implicate the Fourth Amendment, courts apply the objective test set forth in *Mendenhall*. Under this test, law enforcement has done so "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. In making this determination, courts consider several factors including the activation of a siren or flashing lights, commanding a person to halt, displaying a weapon, and operating a vehicle in an aggressive manner to block a person's course. *See, e.g.*, *Michigan v. Chesternut*, 486 U.S. 567, 575-76 (1998) (listing examples).

The Court finds that DUSM Terrel made a show of authority directed at Mr. Hudson. DUSM Terrel pulled up behind the Camaro, activated his red-and-blue flashing lights, and exited his vehicle with his weapon drawn while shouting, "Stop. Police. Get out of the car."[2] DUSM

---

[2] The Court credits the testimony of DUSM Terrel. His testimony was clear and detailed. At the hearing, he was calm, sought to explain his observations, and gave thoughtful testimony. He conceded information that was not helpful to the government and admitted when information was outside of his knowledge. In all material respects,

Terrel then repeatedly ordered Mr. Hudson to "Get on the ground." These actions constitute a show of authority directed at Mr. Hudson, and, in view of all of the circumstances, a reasonable person would have understood DUSM Terrel's actions as such. *See, e.g.*, *United States v. Salazar*, 609 F.3d 1059, 1066 (10th Cir. 2010) (noting that the parties agree that activation of a patrol car's flashing lights constituted a show of authority); *Brower v. Cnty of Inyo*, 489 U.S. 593, 598 (1989) (stating that "a police car pursuing with flashing lights" is "a significant show of authority").

### B. Mr. Hudson Did Not Submit to DUSM Terrel's Show of Authority

Because DUSM Terrel made a show of authority directed at Mr. Hudson, the next issue is whether Mr. Hudson submitted to it. Although there is no bright-line test for when a person has submitted to a show of authority, case law suggests that "submission" requires the person to yield to or manifest compliance with law enforcement directives. *See Hodari D.*, 449 U.S. at 626, 629 (holding that a seizure is not effected through a show of authority until the subject yields). In making this determination, courts must examine the totality of the circumstances because "what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin v. California*, 551 U.S. 249, 262 (2007).

In this case, the Court finds Mr. Hudson did not submit. After DUSM Terrel activated his lights, exited his vehicle with his weapon drawn, and had given various commands, Mr. Hudson looked at him but did not obey. Instead, he started backing out of the driveway (coming within ten feet of DUSM Terrel's car) and then put the Camaro back into drive. Mr. Hudson exited the Camaro while it remained in gear and rolling forward. Mr. Hudson momentarily walked toward

---

his testimony and DUSM Lemer's testimony were consistent. And, for many of the same reasons, the Court also credits the testimony of DUSM Lemer.

4

DUSM Terrel, but he never complied with DUSM Terrel's commands to "Stop" or "Get on the ground." When he was within five feet of DUSM Terrel, he turned and ran, disappearing behind a house. This behavior—failing to stop the vehicle in the driveway, putting the vehicle back into drive once reaching the road, exiting a vehicle that is rolling forward, failing to obey commands to "stop" and "get on the ground", and fleeing—is the antithesis of submission. *See Hodari D.*, 499 U.S. at 626 (stating that there is no seizure where "a policeman yell[s], 'Stop, in the name of the law!' at a fleeing form that continues to flee").

Mr. Hudson argues that he submitted to DUSM Terrel's authority by exiting the vehicle and then fled a little bit later.[3] The Court disagrees. He did not exit the vehicle when he was first ordered to do so. Instead, he backed up the Camaro toward DUSM Terrel's vehicle and then drove forward. His subsequent exit, which appears to have been done to facilitate his flight, does not demonstrate capitulation. This conclusion is bolstered by Mr. Hudson's refusal to follow any other commands after exiting the vehicle and his nearly immediate flight.[4] The Court finds, based on the totality of the facts, that Mr. Hudson did not submit to DUSM Terrel's show of authority. Because

---

[3] Mr. Hudson cites *United States v. Brodie*, 742 F.3d 1058 (D.C. Cir. 2014), as support for this argument. But *Brodie* is inapposite. In *Brodie*, the defendant first obeyed an officer's command to place his hands on a nearby car but then fled after a few seconds. *Id.* at 1061. The circuit court stated that the defendant's compliance was sufficient to find him seized but explicitly contrasted that situation from one like the one presented here. *Id.* It stated: "[A] person's briefly pulling over in response to an officer's flashing lights, followed by the defendant's driving off before the officer even reached the car, did not amount to submission." *Id.* (citation and quotation omitted); *see also Salazar*, 609 F.3d at 1066 (concluding that where driver continued to drive slowly and officer believed he might flee, no seizure until driver obeyed command to exit truck); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) (finding no seizure because "[e]ven if [a suspect] paused for a few moments and gave his name [before running away], he did not submit in any realistic sense"); *United States v. Garrette*, 2017 WL 3337258 (N.D. Fla. 2017) (collecting cases finding no submission).

[4] Although Mr. Potts's account of the events leading up to the encounter varied significantly from the other accounts (and is not credited on those portions), it confirmed the essential aspect of the encounter—that Mr. Hudson ran from DUSM Terrel without submitting to his commands. Mr. Potts testified that, after backing out of the driveway and putting the car into drive, Mr. Hudson "hit the brakes, the car stopped, he got out, and was gone."

5

he did not submit and instead fled, the firearm he left in the vehicle was not the fruit of a seizure but was abandoned.[5, 6]

## III. CONCLUSION

Because Mr. Hudson was not seized during the encounter, the firearm was not the fruit of an unlawful seizure of his person. Law enforcement lawfully seized the firearm after Mr. Hudson abandoned it. Mr. Hudson suffered no violation of his Fourth Amendment rights against unreasonable searches and seizures.

THE COURT THEREFORE ORDERS that Mr. Hudson's Motion to Suppress (Doc. 16) and his Supplemental Motion to Suppress (Doc. 29) are DENIED.

IT IS SO ORDERED.

DATED: February 12, 2019         /s/ *Holly L. Teeter*
                                  HOLLY L. TEETER
                                  UNITED STATES DISTRICT JUDGE

---

[5] The parties did not discuss the issue of abandoned property at the motion hearing, but Mr. Hudson mentioned it in his brief. He acknowledged that he abandoned the firearm but argued that abandonment is not voluntary if it results from a violation of the Fourth Amendment and that a Fourth Amendment violation occurred here because the stop was unjustified. Doc. 16 at 14-15 (citing *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993)). But, importantly, the Court has found no violation of the Fourth Amendment. This outcome is consistent with the caselaw. *See United States v. Russian*, 2015 WL 1863333 (D. Kan. 2015) (holding no warrant was necessary to search defendant's car after he fled), *aff'd in relevant part*, 848 F.3d 1239 (10th Cir. 2017); *United States v. Edwards*, 441 F.2d 749, 751 (5th Cir. 1979) (stating that Fourth Amendment rights come to an end when an individual abandons his car); *United States v. Chappell*, 261 F. Supp. 3d 1202, 1205 (M.D. Ala. 2017) (holding that a fleeing defendant abandoned his car and the gun inside it and "may not contest the constitutionality of its subsequent acquisition by police") (citation and quotation omitted); *United States v. Magana*, 2007 WL 680784, at *3 (D. Nev. 2007) (collecting cases holding that a defendant who flees his vehicle abandons his expectation of privacy in it and its contents).

[6] The government requested additional briefing if the Court found that law enforcement seized Mr. Hudson. Because the Court does not reach that conclusion, the Court denies the government's request.